UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, DC 20549,

Plaintiff,

v.

JOSEPH J. SPIEGEL
c/o E. Niki Warin, Esq.
Law Offices of J. Bruce Maffeo
The Woolworth Building
233 Broadway – Suite 2701
New York, NY 10279,

Defendant.

CASE NUMBER 1:07CV00008

JUDGE: Royce C. Lamberth

DECK TYPE: General Civil

DATE STAMP: 01/04/2007

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## SUMMARY OF ALLEGATIONS

1. Defendant Joseph J. Spiegel ("Spiegel"), a former portfolio manager for Spinner Asset Management, LLC, the investment adviser for Spinner Global Technology Fund, Ltd. ("SGTF" or "the hedge fund"), a $200 million hedge fund, engaged in an unlawful trading scheme on SGTF's behalf in violation of the antifraud and registration provisions of the federal securities laws in connection with three unregistered securities offerings, which are commonly referred to as "PIPEs" (Private Investment in Public Equity). Spiegel's illegal trading resulted in ill-gotten gains

for the hedge fund.

2. After agreeing, on behalf of the hedge fund, to invest in the three PIPE transactions, Spiegel sold short the PIPE issuer's stock through "naked" short sales in Canada. Later, once the Commission declared the resale registration statement effective, Spiegel used the hedge fund's PIPE shares to close out some of all of the pre-effective date short positions — a practice Spiegel knew or was reckless in not knowing was prohibited by the registration provisions of the federal securities laws. In connection with each of the three PIPEs, to avoid detection and regulatory scrutiny, Spiegel employed wash sales and matched orders to make it appear that he was covering SGTF's pre-effective date short positions with open market stock purchases when in fact the covering transactions were not done with open market shares because the hedge fund was on both sides of the trades and covered the short positions with its PIPE shares.

3. The unlawful PIPE investment strategy and trading scheme involved three issuers that sought PIPE financing (collectively, "the PIPE Issuers"). During the relevant period, the common stock of each PIPE Issuer was registered with the Commission pursuant to either Section 12(b) or Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act") and either was quoted on NASDAQ or traded on the New York Stock Exchange.

4. In each of the transactions, Spiegel, on behalf of the hedge fund, also made materially false representations to the PIPE Issuers to induce them to sell securities to the hedge fund. As a precondition of participation in a PIPE, the hedge fund had to represent that it would not sell, transfer or dispose of the PIPE shares other than in compliance with the registration provisions of the Securities Act of 1933 ("Securities Act"). This representation was material to the PIPE Issuers, who, as the securities purchase agreements made clear, relied on the investors' representations in

order to qualify for an exemption from the registration requirements for their private offering. At the time Spiegel, on behalf of the hedge fund, signed the securities purchase agreements, however, he intended to distribute the restricted PIPE securities in violation of the registration provisions of the Securities Act.

5. By engaging in the acts alleged herein, the defendant engaged in, and unless permanently restrained and enjoined by the Court will continue to engage in, transactions, acts, practices and courses of business that violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], and Section 5 of the Securities Act [15 U.S.C. § 77e].

6. The Commission seeks a judgment from the Court: (a) enjoining Spiegel from engaging in future violations of the above sections of the federal securities laws; and (b) ordering Spiegel to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78(u)(d)].

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78aa].

8. The defendant made use of the means and instrumentalities of interstate commerce or of the mails in connection with the acts, practices, and courses of business alleged herein. Venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

**DEFENDANT**

9. **Joseph J. Spiegel**, age 35, is a resident of New York, New York.

**STATEMENT OF FACTS**

**PIPEs Background**

10. Issuers utilize the PIPEs market when more traditional means of financing, such as a registered repeat offering, are for various reasons impractical. PIPE securities are generally issued pursuant to Section 4(2) of the Securities Act or Regulation D under the Securities Act, which provide an exemption from registration for a non-public offering by an issuer. Because PIPEs are unregistered offerings, PIPE investors receive restricted securities when a transaction closes. Before investors can trade those restricted securities, the issuer must file, and the Commission must declare effective, a resale registration statement, a process that may take 60 to 120 days to complete. PIPE investors therefore must wait a certain period of time before they can resell in the public market the securities that they received in the PIPE. The sale of the securities to the PIPE investor is typically conditioned upon effectiveness of the resale registration statement. To compensate investors for this temporary illiquidity, PIPE issuers customarily offer the restricted securities at a discount to market price.

11. Many PIPE investors "hedge" their investment by selling short the PIPE issuer's securities before the resale registration statement is declared effective. The size of the "hedge" is limited by the investor's ability to locate shares of the PIPE issuer's securities to borrow in order to sell short. A PIPE investor that wishes to fully "hedge" its investment therefore typically wants to purchase in the offering only as many shares as it knows it can locate to borrow. In thinly-traded

securities (such as the three at issue in this case), where locating shares can be difficult, investors wishing to "hedge" must limit their investment, which correspondingly limits their ability to profit from the PIPE transaction.

12. Spiegel violated Section 5 by covering some or all of the hedge fund's pre-effective date short positions with the actual shares received in the PIPE. This is because shares used to cover a short sale are deemed to have been sold when the short sale was made.

13. Spiegel knew or was reckless in not knowing the lawful way to "hedge" PIPE investments, but instead closed out some or all of the hedge fund's pre-effective date short positions with PIPE shares.

### The Unlawful Trading Scheme

14. The unlawful trading strategy was simple: to short sell some or all of the hedge fund's restricted PIPE allocation before the Commission declared the resale registration statement effective and then to close out those short positions using the hedge fund's PIPE shares. The scheme enabled the hedge fund to invest in PIPE offerings without incurring market risk as to those shares sold short pre-effective date and later covered with offering shares.

15. In each of the three transactions listed below, Spiegel employed this trading strategy in violation of the antifraud and registration provisions of the federal securities laws:

|   | PIPE Issuer | PIPE Closing Date |
|---|---|---|
| 1 | Tripath Technology, Inc. | 01/25/02 |
| 2 | Hypercom Corporation | 03/22/02 |
| 3 | Novatel Wireless, Inc. | 10/18/02 |

16.    Although the manner of establishing and covering the short positions differed slightly for each PIPE offering, the Tripath Technology, Inc. ("Tripath") PIPE that closed on January 25, 2002 illustrates the defendant's basic trading strategy: Spiegel, on behalf of the hedge fund, invested $2,000,000 in the offering, receiving 66,667 shares of restricted Series A Preferred stock at $30 per share. Each Series A Preferred share converted into 20 shares of common stock – a discount of approximately 33% from Tripath's then-market price of approximately $2.22 per share. Spiegel, on behalf of the fund, then short sold 362,200 Tripath common shares. Thus, Spiegel, on behalf of the hedge fund, had purchased in the PIPE 66,667 Series A Preferred shares convertible into 1,333,340 common shares and sold short 362,200 common shares before the resale registration statement was effective. Once the Commission declared the resale registration statement effective, Spiegel, through the deceptive and nearly undetectable methods described below, used the hedge fund's converted common shares that were covered by such registration statement to close out the 362,200 share short position. The hedge fund's profit on those 362,200 shares was therefore locked in at the moment the short sales were executed.

17.    Spiegel, on behalf of the hedge fund, engaged in essentially the same illegal trading scheme in connection with the other two PIPE offerings.

18.    Because Spiegel wanted to complete the hedge fund's short selling as cheaply as possible, he executed the hedge fund's pre-effective date short sales through a Canadian broker-dealer. Using the Canadian broker-dealer, Spiegel, on behalf of the hedge fund, executed "naked" short sales by, among other things, selling short without borrowing unrestricted shares to deliver. "Naked" short selling was permissible in Canada during the relevant period, so Spiegel attempted to establish the hedge fund's short positions in Canada because the hedge fund did not own unrestricted

6

shares and did not want to incur the cost of borrowing unrestricted shares of the PIPE Issuers' securities. Because the hedge fund therefore had no borrowing limitations, and because it would be using its PIPE shares illegally to close out its pre-effective date short positions, the hedge fund was able to earn larger profits.

19.    Once Spiegel had established the hedge fund's short position, he waited until the Commission declared effective the resale registration statement and then began to use the hedge fund's PIPE shares to cover (or "unwind") the short positions in violation of Section 5 of the Securities Act.

20.    To close out the Canadian short positions, Spiegel engaged in deceptive, pre-arranged trades with his Canadian broker-dealer. To execute the pre-arranged trades, Spiegel would call or instant message his Canadian broker to inform the broker that he intended to sell a certain number of the hedge fund's PIPE shares from its domestic prime brokerage account at a particular time and price using a particular exchange and/or broker, and would instruct the Canadian broker to enter a buy order for the hedge fund's Canadian account for the same number of shares at the same time and price and using the same exchange and/or broker. Most or all of the buy and sell orders would match, and the Canadian broker, on behalf of the hedge fund, would use the PIPE shares that had just been purchased from the hedge fund's domestic account to close out the hedge fund's Canadian short positions.

21.    As a necessary part of the unlawful trading scheme, Spiegel made materially false representations to the PIPE Issuers to induce them to sell their securities to the hedge fund. Each securities purchase agreement between the PIPE Issuers and the hedge fund contained a provision in which the hedge fund represented that it was purchasing the PIPE securities in compliance with

Section 5 of the Securities Act. In each of the three offerings, Spiegel, on behalf of the hedge fund, represented, among other things, that the hedge fund was purchasing the securities for its own account and without any present intention of distributing the securities.

22. Spiegel signed these securities purchase agreements despite knowing or recklessly not knowing that the hedge fund (i) was not purchasing the PIPE securities for its own account, and (ii) had a present intention to distribute the PIPE securities through its short selling and to cover with the PIPE shares in violation of Section 5.

## FIRST CLAIM FOR RELIEF

### FRAUD
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

23. The Commission realleges and reincorporates paragraphs 1 through 22 as if fully set forth herein.

24. During 2002, the defendant, by use of the means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omissions to state material facts necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit.

25. By reason of his actions alleged herein, the defendant violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF

### REGISTRATION AND PROSPECTUS DELIVERY
### Violations of Section 5 of the Securities Act

26. The Commission realleges and reincorporates paragraphs 1 through 25 as if fully set forth herein.

27. Defendant, directly or indirectly: (a) without a registration statement in effect as to the securities, (i) made use of the means or instruments of transportation or communication or the mails to sell such securities through the use or medium of a prospectus or otherwise, or (ii) carried or caused to be carried through the mails, or in interstate commerce, by any means or instruments of transportation, such securities for the purpose of sale or for delivery after sale; (b) carried or caused to be carried through the mails or in interstate commerce securities for the purpose of sale or for delivery after sale without being accompanied or preceded by a prospectus; and (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of a prospectus or otherwise securities for which a registration statement had not been filed as to such securities.

28. By reason of his actions alleged herein, the defendant violated Section 5 of the Securities Act [15 U.S.C. § 77e].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

### I.

Finding that the defendant violated the securities laws and Rule promulgated thereunder as alleged herein;

### II.

Enjoining permanently defendant Joseph J. Spiegel from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Section 5 of the Securities Act [15 U.S.C. § 77e];

### III.

Ordering defendant Joseph J. Spiegel to pay a civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78(u)(d)]; and

## IV.

Granting such other relief as this Court may deem just and proper.

Dated: January 4, 2007                          Respectfully submitted,

*/s/ Daniel T. Chaudoin*
Scott W. Friestad
Robert B. Kaplan
Daniel T. Chaudoin (Bar No. 458659)
Anthony S. Kelly
Julie M. Riewe (Bar No. 472470)

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4952 (Chaudoin)
(202) 772-9231 (fax) (Chaudoin)
chaudoind@sec.gov

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Securities and Exchange Commission

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Daniel T. Chaudoin, Esq.
Division of Enforcement
100 F Street, N.E.
Washington, DC 20549
(202) 551-4952

## DEFENDANTS

Joseph J. Spiegel

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

CASE NUMBER  1:07CV00008
JUDGE: Royce C. Lamberth
DECK TYPE: General Civil
DATE STAMP: 01/04/2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ⊙ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ⊙ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☒ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- (●) 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, and 15 U.S.C. § 77e -- Violation of antifraud and registration provisions of the federal securities laws

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint    JURY DEMAND: YES ☐  NO (☒)

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐  NO (☒)    If yes, please complete related case form.

DATE January 4, 2007    SIGNATURE OF ATTORNEY OF RECORD  /s/

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.